Bruce S. Asay  W. S. B. # 5 – 1739
Gregory B. Asay W.S.B. #5-7032
Associated Legal Group, LLC
1812 Pebrican Ave.
Cheyenne, WY 82001
(307) 632-2888
(307) 632-2828 (fax)

*Attorneys for Plaintiff, Terri Van Dam*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 APR -9  PM 1:06

MARGARET BOTKINS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TERRI VAN DAM, <br> Plaintiff, <br><br> vs. <br><br> TOWN OF GUERNSEY, a Wyoming municipal corporation, NICK PAUSTIAN, as an individual and in his official capacity as mayor of the Town of Guernsey, KATE FARMER, as an individual and in her official capacity as the clerk and treasurer for the Town of Guernsey and KELLY AUGUSTINE as an individual and in his capacity as councilman for the Town of Guernsey, <br><br> Defendants. | Docket No. 20CV60-S |

### VERIFIED COMPLAINT

The Plaintiff, Terri Van Dam ("Plaintiff" or "Van Dam"), by and through her undersigned counsel, for her Complaint, against Defendants, Town of Guernsey et al. states and alleges as follows:

### INTRODUCTION

1. This is an action brought by the Plaintiff against the Defendants for violations of the Plaintiff's rights under the United States Constitution and the Wyoming Constitution and certain state law claims. The Plaintiff brings this action for actual and compensatory damages as

well as punitive damages and attorney's fees. The Plaintiff brings this *Complaint* for discrimination and retaliation based on her unlawful and void termination from employment in 2020 where Ms. Van Dam previously worked as chief of police for the Town of Guernsey Police Department.

**PARTIES**

2. Ms. Van Dam is a resident of Guernsey, Platte County, Wyoming. At all times relevant to this action, Plaintiff was employed by Defendant, Town of Guernsey as a police officer for the Town of Guernsey Police Department ("GPD").

3. The Town of Guernsey ("Guernsey" or "Town"), Defendant, is a Wyoming municipal corporation situated in Platte County, Wyoming. Guernsey previously employed the Plaintiff until she was wrongfully terminated in January of 2020. Guernsey will be vicariously liable for the actions of its employees acting under color of title while performing tortious or unconstitutional acts.

4. Defendant Nick Paustian ("Paustian"), at all times relevant was the mayor of Guernsey and acted under color of title when terminating the Plaintiff in violation of her protected rights. Further, Paustian disseminated false information relating to Plaintiff's job performance and ability.

5. Defendant Kelly Augustine ("Augustine"), at all times relevant was a town councilman for Defendant Town and acted under color of title to assist in the termination of the Plaintiff in violation of her protected rights. Further, Augustine disseminated false information relating to Plaintiff's job performance and ability.

6. Defendant Kate Farmer ("Farmer"), at all times relevant was the clerk and treasurer and was acting under color of title when she assisted with the termination of the

Plaintiff in violation of Plaintiff's protected rights. Further, Farmer disseminated false information relating to Plaintiff's job performance and ability.

## JURISDICTION

7. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343 as the causes of action arose under the laws of the United States of America and the state of Wyoming. As the acts complained of herein were and are now being committed within the state of Wyoming, this Court has jurisdiction over any contract, statutory or common law claim. Venue is also proper under 28 U.S.C. § 1391(b).

## GENERAL FACTUAL ALLEGATIONS

8. The Plaintiff began working for Defendant on January 3, 2015 when she was hired as a police officer. Over the next three years she would work her way up to sergeant and then be appointed chief of police in 2019.

9. During her tenure as a law enforcement officer for the Town, Ms. Van Dam endured a fair amount of gender discrimination, and observed questionable behavior from her own superiors and town officials.

10. She reported some offensive conduct to her predecessor chief of police who dismissed her allegations and encouraged her to keep her mouth shut.

11. In 2018 the Plaintiff began collecting evidence on her own, outside of her official position and on her personal time. She would continue this investigation for nearly two years, eventually leading to a list of several dozen alleged misfeasors including persons working for the Town and town officials.

12. In January of 2019, the Plaintiff was appointed by the Town to chief of police for the GPD. This led to more discrimination, but Plaintiff was undeterred in her personal investigation into corruption.

13. In the summer of 2019, the Plaintiff, after getting approval from the Town, hired two additional police officers, (Misty Clevenger and Andrew Gilmore) as well as an administrator.

14. It is later discovered that the Town treasurer, Defendant Kate Farmer, only raised the GPD wage budget by approximately $9,000. Far less than required to accommodate the new hires. Plaintiff raised this issue with Farmer and was assured the budget would be amended.

15. Despite these assurances, Farmer failed to raise the GPD wage budget. In October of 2019, the Plaintiff was confronted by the Town because GPD was over budget. The Plaintiff reviewed her books and discovered that GPD was not over budget, but rather there was never any adjustment made for the new hires. Plaintiff noticed other discrepancies.

16. Also in October of 2019, the Plaintiff reported the findings of her investigation to Wyoming Division of Criminal Investigation ("DCI") and then to the FBI in November of 2019. Most of her disclosures are made through her official GPD email address, but she also had in person meetings and physically dropped off documents.

17. In December of 2019, the Defendant Paustian again accused Plaintiff of being over budget and takes it upon himself to reduce the hours of GDP employees.

18. Plaintiff makes another round of disclosures to Wyoming DCI.

19. In late December the Plaintiff noticed that her police email has been compromised. When she opened her inbox she saw that some emails had been viewed even though she has not opened them. This was particularly concerning due to the confidential disclosures she had sent to DCI and the FBI. Plaintiff was also concerned about someone

4

with unauthorized access viewing juvenile records and other sensitive and confidential information.

20. On information and belief, Defendant Kate Farmer used her credentials as email administrator for the Town to access GPD email and distribute information she found to other Town employees.

21. On January 3, 2020, Ms. Van Dam informed the Town attorney, Dana Lent, that she believed her emails had been hacked. Additionally, Plaintiff disclosed that she has forwarded her investigation results to DCI and the FBI. Lent indicated to the Plaintiff that the disclosure was confidential and secure.

22. On January 7, 2020 at a public town hall meeting, the Town attorney disclosed to the Town council that the Plaintiff had reported misconduct to DCI and the FBI and that an active investigation was taking place. Plaintiff was shocked at the disclosure considering the repercussions of publicly disclosing the investigation to the potential suspects.

23. On January 15, 2020 the Plaintiff is terminated. Defendant Paustian, under the pretense of discussing her over budgeting, invited the Plaintiff to meet with him in the afternoon.

24. When Plaintiff arrived at the meeting she noted two armed sheriff deputies from the Platte County Sheriff's office in addition to Defendant Paustian and Defendant Augustine.

25. Defendant Paustian told the Plaintiff that she was an at-will employee and that she was being terminated for not providing the police work schedule and for "not being on the same plane" as himself. Defendant Paustian also asserted the false accusation that Ms. Van Dam had disclosed information to a private citizen that had wound up on a social media post which he thought "hits a little too close to home."

26. After terminating the Plaintiff, Paustian told her that she had a choice to either prepare a letter of resignation or things would get nastier. Plaintiff, under protest, was forced to provide a resignation letter couple of days later.

27. Further facts will be discussed below as relevant.

## CLAIM I-Retaliatory Termination in Contravention to Constitutional Right- Freedom of Speech.

28. Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

29. As a citizen of the United States of America and Wyoming, the Plaintiff enjoys a constitutional and fundamental right, to the freedom of speech.

> The First Amendment to the Constitution of the United States guarantees freedom of speech to all citizens as a fundamental right. This constitutional limit upon restricting free speech is applied to state agencies and state officials by virtue of the "privileges or immunities" clause of the Fourteenth Amendment to the CONSTITUTION OF THE UNITED STATES. ARTICLE 1, SECTION 20, of the Constitution of the State of Wyoming also guarantees to every person the right of freedom of speech.

*Mekss v. Wyoming Girls' School, State of Wyo.*, 813 P.2d 185, 193 (1991). (Internal citations omitted).

30. Consistent with the United States Supreme Court Holding in *Pickering v. Board of Education of Township*, 88 S.Ct. 1731, 391 U.S. 563, as modified by *Garcetti v. Ceballos*, 126 S.Ct. 1951, 547 U.S. 410, 164 L.Ed.2d 689, (2006) the Tenth Circuit described a five-prong test to determine if a Plaintiff's first amendment rights had been violated. *Dixon v. Kirkpatrick*, 553 F.3d 1294, (Cir. 2009) This test was used most recently by the Wyoming Supreme Court in *Mahoney v. City of Gillette*, 436 P.3d 444, 2019 WY 28, (Wyo. 2019).

>(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Id. at 451.

31. In the present case, the Plaintiff was terminated for collecting and reporting illegal activity to state and federal law enforcement. As the Plaintiff spent unpaid non-work hours on the investigation and reported the information to outside agencies, this activity was outside of her employment duties and protected.

32. The Plaintiff was also reporting issues which potentially involved town officials and town employees using their public offices and resources to accomplish illegal activity, clearly a matter of public concern satisfying the second prong.

33. As the first and second prong of the *Pickering/Garcetti* test favor Ms. Van Dam, the speech of the Plaintiff was protected.

34. When the speech is protected, the burden will fall to the Defendant:

>After determining that the employee's speech is protected (which we have just done), we go on-in step three-to decide " whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Brammer-Hoelter*, 492 F.3d at 1203 (quoting *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir.2007)). Although this element is framed as a " balancing" test, this Court has held that First Amendment rights " are protected ' unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee.' " *Gardetto v. Mason*, 100 F.3d 803, 815 (10th Cir.1996) ( quoting *Wren v. Spurlock*, 798 F.2d 1313, 1318 (10th Cir.1986), in turn quoting *Childers v. Ind. Sch. Dist. No. 1*, 676 F.2d 1338, 1341 (10th Cir.1982)); see *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951 (" The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." ); *Brammer-Hoelter*, 492 F.3d at 1207 (" the question is whether the employer ' has an efficiency interest which would justify it in restricting the particular speech at issue' " , ( quoting *Cragg v. City of Osawatomie*, 143 F.3d

> 1343, 1346 (10th Cir.1998))). In other words, unless the government employer can show that the termination was based on legitimate reasons grounded in the efficient conduct of public business, there is no need to proceed to balancing, and the First Amendment interest of the plaintiff prevails.

*Dixon v. Kirkpatrick* at 1304.

35. The Town negatively impacted its own interest in efficient public service by attempting to cover up alleged illicit activity by terminating employees that would not get on the same plane as the bad actors. The Town's interest in covering up allegations of misconduct does not outweigh the Plaintiff's interest in reporting what she perceived to be illegal conduct to outside agencies.

36. Whether the Plaintiff's report of illegal activity was a motivating factor in her termination and whether the Town would have terminated her in the absence of her report will be issues of fact for the fact-finder. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d at 1203 (citing *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998). Plaintiff believes that her lack of any prior disciplinary action, the false accusations against her, unauthorized hacking into police hard-drives and email, failure to follow internal policy, failure to provide due process, failure to assert a true reason for the termination, and other facts to be proved at trial will tend to show that Defendant was motivated by Plaintiff reporting illegal activity and in the absence of such report she would remain employed.

37. The Town, Paustian, Augustine and Farmer acted to terminate an employee for reporting illegal activity to an outside agency which violated her constitutional right.

**CLAIM II- Violation of Due Process - Property Interest**

38. Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

8

39. The Plaintiff, as a non-probationary public employee is entitled to a property interest in her continued employment with GPD. "A nonprobationary . public employee is entitled to written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Metz v. Laramie County School Dist. 1, 173 P.3d 334, 343. (quoting *Lucero v. Mathews*, 901 P.2d 1115 (Wyo. 1995). "The notice of which we speak is the same kind of notice that is due any public employee who has a property right in continued employment, which includes tenured teachers, municipal judges, **and any other nonprobationary public employee**." Id. (emphasis added).

40. Plaintiff's property interest is further bolstered by the Guernsey Town Code (GTC) § 1-6-2 which states that chief of police may be discharged only by a majority vote of the governing body. (Charter Ord. 2, 6-1-2004).

41. Additionally, Ms. Van Dam was hired by the Town in 2015 as an officer, and retains that status including the protections of the Guernsey Police Department Standard Operating Guidelines (GPD Guidelines) Chapter 4; Sections C and H.

42. Section C of the GPD Guidelines provide that officers certified by Peace Officer Standards and Training (POST) will endure a six month probationary period. As the Plaintiff was POST certified and worked for the GPD for several years, she was a non-probationary public employee.[12]

43. Section H of the GPD Guidelines states; "After the probationary period, an officer will be subject to dismissal only for cause." Section H goes on to state the chief of police has the authority to discharge a non-probationary officer. No other individual is granted that authority.

---

[1] Section C also states that probationary and non-probationary employees remain at will, but Section 10 makes it clear that non-probationary officers can only be fired for cause and only by the chief of police altering the at-will status.

9

Section H also provides detailed procedures for terminating an officer including a post termination final report providing a detailed account of the reasons for termination. No procedure is provided for any notice or hearing to a terminated officer.

44. Pursuant to federal and state law:

> The opportunity to be heard before a public employee's property interest may be taken away goes hand in hand with the notice he must receive. Constitutional due process requires that a public employee be afforded a hearing wherein he may respond to the charges that are contained within the notice before his constitutionally protected property interest may be terminated. This necessarily means that the public employee must be given a real and meaningful opportunity to respond to every charge or allegation that is being brought against him and which will be used as a cause for his termination. If the public employee has not been given an opportunity to respond to every allegation which is used against him as a cause for termination of his property interest, then he has not been given a real and meaningful opportunity to be heard and, thus, he has been deprived of constitutionally protected property without due process of law.

*Metz v. Laramie County School Dist. 1*, 2007 WY 166, 173 P.3d 334, 343 (2007)(citations omitted).

45. The Wyoming Supreme Court and the United States Supreme Court have both emphasized that a pre-termination hearing is of paramount importance as "the only meaningful opportunity to invoke the discretion of the decision maker is likely to be before the termination takes effect. Id. at 342 (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

46. In short, the Plaintiff was constitutionally entitled to notice of the charges against her, and an opportunity to be heard before being terminated. Further, she was also entitled to a post-termination hearing.

47. In stark contrast, using information gathered by Defendant Farmer, the Plaintiff was terminated in person by Defendants Paustian and Augustine under the color of their

authority as mayor and councilmember without any notice and without providing an opportunity to be heard. She was also told that she was an at-will employee and the only reasons stated for her termination was that she failed to provide the mayor with sensitive police schedules or get on the same plane.

### CLAIM III- Violation of Due Process - Liberty Interest

48. Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

49. Plaintiff possesses a constitutional right to a liberty interest in her continued ability to work in her chosen profession of law enforcement.

50. Wyoming recognizes that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Crofts v. State ex rel. Department of Game & Fish*, 367 P.3d 619, 626, 2016 WY 4, (Wyo. 2016) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). "[W]e explained that the dismissal of a government employee accompanied by a 'charge against him that might seriously damage his standing and associations in his community' would qualify as something 'the government is doing to him' so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name." Id. at 626 (internal citations omitted).

51. In order for the Plaintiff to recover she will need to show that the Town made statements which:

> (1) impugned her "good name, reputation, honor, or integrity;"
> (2) were false;
> (3) occurred in the course of her termination or will foreclose other employment opportunities; and
> (4) were published.

11

Id. ;see also *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976) (for a liberty interest to attach, " the defamation had to occur in the course of the termination of employment").

52. In the present case, Ms. Van Dam was terminated in the presence of multiple people who had not signed any confidentiality agreement and were not otherwise under any requirement to keep the termination confidential.

53. During the course of the termination, the Plaintiff was falsely accused of posting confidential information on Facebook; failing to balance the police department budget; being insubordinate; and failing to be a team player.

54. Particularly in law enforcement, an attack on an officer's good name, reputation, honor, or integrity will be particularly detrimental. In addition to the normal and obvious difficulty overcoming such false statements to acquire employment, an officer will likely have to disclose this information in future investigations or trials and this alone will likely discourage future employment. See generally *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *Jencks v. United States*, 353 U.S. 657 (1957).

55. When the Town made false accusations against the Plaintiff during her termination on January 15, 2020 and in front of multiple witnesses, the Plaintiff was entitled to and denied an opportunity to address those accusations and clear her name.

## CLAIM IV- Private Action Pursuant to 1983

56. Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

57. Under state and federal law the Plaintiff has a cause of action against Defendants Paustian, Augustine and Farmer for acting under the color of their governmental authority when they violated her constitutional rights.

58. The Wyoming Supreme Court has held:

> Aggrieved persons have a private cause of action under 42 U.S.C. § 1983 for "the deprivation of any rights, privileges, or immunities secured by the Constitution ..." by a person acting under color of state law. 42 U.S.C. § 1983 (2012); *Garnett v. Coyle*, 2001 WY 94, ¶¶ 16-17, 33 P.3d 114, 120 (Wyo. 2001). This Court has concurrent jurisdiction with the federal courts over 42 U.S.C. § 1983 actions. *Metz v. Laramie Cty. Sch. Dist. No. 1*, 2007 WY 166, ¶ 28, 173 P.3d 334, 342 (Wyo. 2007). "[S]tate employment is generally sufficient to render the defendant a state actor" so long as there is a nexus between the employee's use of authority as a public employee and the alleged constitutional violation. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995).

*Wyoming Guardianship Corporation v. Wyoming State Hospital*, 428 P.3d 424, at 431 2018 WY 114, (Wyo. 2018)

59. As such, the Plaintiff is entitled to relief from the Defendants.

## CLAIM V Injunctive Relief

60. Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

61. As the Town violated the Plaintiff's protected constitutional rights, the Plaintiff is entitled to injunctive relief against the Town in the form of reinstatement to her previous position and a discontinuation of the violation of her constitutional rights.

62. Injunctive relief against municipalities has long been accepted by the Tenth Circuit in 1983 actions:

> The instant action seeks equitable relief, not damages. The City insists that if it is not a person covered by 1983 in damage actions, it is not such a person with respect to actions for injunctive relief. The argument finds some support in footnote 50 to the Monroe opinion, 365 U.S. 167, 191, 81 S.Ct. 473, n. 50. We read that footnote as differentiating between actions for damages and

13

> actions for equitable relief and as intending no bar to equitable actions for injunctive relief against invasions of a plaintiff's federal constitutional rights by municipal action. This view is supported 425 F.2d 1039 by *Adams v. City of Park Ridge*, 7 Cir., 293 F.2d 585, 587; *Schnell v. City of Chicago*, 7 Cir., 407 F.2d 1084, 1086; and *United States v. City of Jackson, Mississippi*, 5 Cir., 318 F.2d 1, 11. See also dissenting opinion of Judge Rives in *Bailey v. Patterson, S.D.Miss.*, 199 F.Supp. 595, 614-615, vacated and remanded 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512. Here we have a corporation and an individual representing a class claiming that their Fourteenth Amendment rights have been denied. We see no reason why a municipality and its employees may not be enjoined from acting in violation of those rights.

*Dailey v. City of Lawton, Oklahoma*, 425 F.2d 1037, (Cir. 1970).

### CLAIM VI- Declaratory Judgment- Termination is void

63.    Plaintiff incorporates and re-alleges each and every preceding allegation as if fully set forth herein.

64.    The Plaintiff was terminated by the mayor on January 15, 2020.

65.    Pursuant to the Town Code (the Code) the officers of the Town must consist of the mayor and four council members. Additionally, this governing body is tasked to determine the procedure for "all other appoints and removals." Code § 1-6-1 (Charter Ord. 2, 6-1-2004).

66.    The Town does provide the procedure for the removal of a police chief and requires a majority vote by the governing body, meaning at least three members must agree to the termination which presumably could only be accomplished at an official council meeting. Code §1-6-2 (Charter Ord. 2, 6-1-2004).

67.    As the mayor, one councilmember and the treasurer lacked the authority to terminate the Plaintiff, and failed to follow mandatory procedures, the Plaintiff's termination is void and she is entitled to immediate reinstatement and back pay. See *Todriff v. Shaw*, 95 A.D.2d 775, 775, 463 N.Y.S.2d 257, 257 (App. Div. 1983) (Court concluded that the former employee was fired from her job by someone who did not have the authority to either appoint or

remove anyone under the provisions of N.Y. Mental Hyg. Law § 13.21. Therefore court held that the termination of the former employee was void.). *Robert v. Lower Bucks Cnty. Joint Mun. Auth.*, 31 Pa. D. & C.4th 456, 459 (C.P. 1996) (Without such authorization, the termination of an employee would be null and void."). See also *Xiong v. Fischer*, 2014 U.S. Dist. LEXIS 82753, 32, 2014 WL 2765802 (W.D. Wis. June 17, 2014) (Court notes validity of proposition that "a termination made by one other than the 'appointing authority' is void.").

## DAMAGES

68. As a result of the above, the Plaintiff has suffered damages. Plaintiff is entitled to damages as she has lost: employment income; overtime pay; vacation accrual and training; deprivation of liberty; deprivation of property; retaliation and loss of reputation.

69. Due to the actions of the Defendants the Plaintiff has suffered damages in an amount to be proven at trial, including lost wages and benefits, lost economic potential, harm to her reputation, emotional distress and incurrence of attorney's fees and other costs including prejudgment interest.

70. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled by statute to recover her reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief of the court as follows:

1. For Judgment against Defendants in favor of Plaintiff sufficient to compensate her for injuries caused by the unlawful actions of the Defendants as will be proved at trial;

2. For past wages, immediate reinstatement or where unfeasible, front pay, back pay, benefits, future losses, emotional pain, suffering, inconvenience, mental suffering, loss of enjoyment of life, prejudgment interest, all due to the Defendant's interference with Plaintiff's

constitutional and civil rights as guaranteed by the Constitution of the United States of America and state of Wyoming;

    3.    For a declaratory judgment that her termination was void; and

    4.    For Plaintiff's costs and reasonable attorney's fees incurred herein pursuant to federal and state law; and for such other relief this Court deems just and equitable in the premises.

DATED this 9 day of April, 2020.

                                                                          Bruce S. Asay W. S. B. # 5 – 1739
                                                                          Gregory B. Asay W.S.B. #5-7032
                                                                          1812 Pebrican Ave.
                                                                          Cheyenne, WY 82001
                                                                          (307) 632-2888
                                                                          (307) 632-2828 (fax)
                                                                          Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 APR -9 PM 1:06

MARGARET BOTKINS, CLERK
CHEYENNE

| | |
|---|---|
| TERRI VAN DAM,<br>Plaintiff, | )<br>)<br>) Docket No. 20CV60-S |
| vs. | ) |
| TOWN OF GUERNSEY, a Wyoming municipal corporation, NICK PAUSTIAN, as an individual and in his official capacity as mayor of the Town of Guernsey, KATE FARMER, as an individual and in her official capacity as the clerk and treasurer for the Town of Guernsey and KELLY AUGUSTINE as an individual and in his capacity as councilman for the Town of Guernsey,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## Demand for Jury

The Plaintiff demands a trial by jury of six peers on all issues so triable.

_____
Bruce S. Asay W. S. B. # 5 – 1739
Gregory B. Asay W.S.B. #5-7032
1812 Pebrican Ave.
Cheyenne, WY 82001
(307) 632-2888
(307) 632-2828 (fax)
Attorneys for Plaintiff

17

Verification

I, Terri Van Dam of Guernsey, Wyoming, have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct.

_/s/ Terri Van Dam_
Terri Van Dam

STATE OF Wyoming )
                 ) SS.
COUNTY OF Laramie )

The foregoing instrument was acknowledged, subscribed, and sworn to before me this 27th day of March, 2020 by Terri Van Dam.

_/s/ Morgan Swallow_
Notary Public

My Commission Expires: Sept. 27, 2021

MORGAN SWALLOW - NOTARY PUBLIC
COUNTY OF LARAMIE
STATE OF WYOMING
MY COMMISSION EXPIRES SEPT. 27, 2021