Bruce S. Asay
Greg B. Asay
Associated Legal Group, LLC
1812 Pebrican Avenue
Cheyenne   WY   82001
Telephone:  (307) 632-2888
Facsimile:   (307) 632-2828
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TERRI VAN DAM, | ) | |
| Plaintiff, | ) | |
| | ) | Docket No.20CV60-S |
| vs. | ) | |
| | ) | |
| TOWN OF GUERNSEY, et al. | ) | |
| Defendants | ) | |

\*\*\*

| | | |
|---|---|---|
| KATHY MONTGOMERY, | ) | |
| Plaintiff, | ) | |
| | ) | Docket No. 20CV61-J |
| vs. | ) | |
| | ) | |
| TOWN OF GUERNSEY, et al. | ) | |
| Defendants. | ) | |

\*\*\*

| | | |
|---|---|---|
| MISTY CLEVENGER, | ) | |
| Plaintiff, | ) | |
| | ) | Docket No. 20CV62-F |
| vs. | ) | |
| | ) | |
| TOWN OF GUERNSEY, et al. | ) | |
| Defendants. | ) | |

## MOTION TO COMPEL THE DEPOSITION TESTIMONY OF DANA LENT

The Plaintiffs in the above actions, Terri Van Dam, Kathy Montgomery and Misty

Clevenger, by and through their undersigned counsel, for their Motion to Compel the Deposition

Testimony of Dana Lent against the Defendants, Town of Guernsey et al. states and alleges as

follows:

## INTRODUCTION

Pursuant to F.R.C.P. 37(b) and (c) and the court's inherent powers, Plaintiff  moves  this

court  for  an  order  requiring Defendant to produce the Defendant's town attorney for a

deposition regarding Defendant's "advice of counsel" defense asserted to justify the intentional destruction of multiple email accounts after Defendant reviewed the same for relevant documents.

## FACTUAL BACKGROUND

Defendants terminated Terri Van Dam on January 15, 2020.  A day or two after her termination, Ms. Van Dam informed the Town that she would possibly seek legal recourse.  The Town's 30(b)(6) representative, Kate Farmer testified that when Van Dam informed her of possible legal recourse that she understood litigation was possible at that time, January 17th, 2020. Deposition Transcript of Kate Farmer as Defendant Town's 30(b)(6) witness ((30(b)(6) TR) at 69:15 to 71:9.  On January 17, 2020 the Defendants were aware that litigation regarding the termination of Ms. Van Dam was likely.  Defendant Kate Farmer later admitted that information contained in the emails of Misty Clevenger would be relevant and probably be helpful to Ms. Van Dam's litigation. Deposition Transcript of Kate Farmer (Farmer TR) at 119:25 to 120:5). Defendant Kate Farmer stated; "Ms. Clevenger's emails, yes, could probably help you.  Unfortunately, the only emails that were pulled from hers were given to Ms. [Dana] Lent [the Town attorney], and the email address was deleted and we no longer have access to any of her emails besides what was given to Ms. Lent." Id. at 123;4-8.

Defendant asserts that because Van Dam specifically informed the town that she was seeking legal recourse, Dana Lent, the Town attorney (Lent) advised them to retain all of Ms. Van Dam's emails.  30(b)(6) TR 70;2-6. Further, it was possible to save the emails of the other two Plaintiff's, Misty Clevenger and Kathy Montgomery and there's no reason the emails for these two could not have been preserved. Id. at 70;4-9.  Nevertheless the emails of Misty Clevenger and Kathy Montgomery were all deleted.  According to Defendants, the emails of

Plaintiff Van Dam[1] and Plaintiff Clevenger were both deleted on February 18, 2020 and the emails for Plaintiff Montgomery were deleted on February 7th, 2020. 68;17-19. Defendant first asserted that the accounts were deleted because three unnamed employees needed email accounts, "[a]nd if I don't have an employee here, there's no reason to keep their email.  And I did discuss with my town attorney if I could delete them." Id. at 69;1-5.  Although Defendant states that she asked counsel for advice, Defendant was adamant that she was not seeking advice relating to future litigation.

> Q.   So why would you talk to the town attorney if you weren't concerned about litigation?
> A.   Because I don't know everything, and I like to talk to legal counsel to get advice.

Id. at 69;11-14.

Defendant went on to assert that the Town attorney, Lent didn't just advise her to delete the emails, but in fact requested she go through the email accounts for all three terminated employees, pull out information which would support the Town's justification for termination (sharing information with Karina Lewis) and then delete the accounts.

> The -- the town attorney asked me to look for anything going through to tie [the Plaintiffs] to, again, Ms. Carina Lewis, or any un -- I guess out of the ordinary emails.  And when I didn't find any in Ms. Montgomery's, I deleted it.  And I did see a few things with Ms. Lewis's that I sent to Dana Lent.  Or Ms. Clevenger's that was -- that had Ms. Lewis in the subject line or in the body of the text.

Id. at 70;11-18.  Defendant also admitted that as soon as the lawsuits were filed, they knew the emails were relevant and attempted to retrieve them to no avail. Id. at 71;18-25. Defendant

---

[1] Although Van Dam's emails were also deleted, a copy was created.

asserts the Town attorney had her back up Ms. Van Dam's emails because she had mentioned litigation. Id. 72;7-10.

The Town alleges it terminated Ms. Clevenger because she lied about not knowing Karina Lewis had shared information regarding the Town's attempt to defund the police with Karina Lewis. Transcript of Deposition of the Town Mayor, Nicholas Paustian (Paustian TR) at 64;5-12.  ("Ms. Lewis had posted something about disbanding the police department on Facebook, and there was information that they -- the counsel felt that came directly from the police department.  And so they wanted to see if there was any correspondence between Ms. Van Dam and Ms. Lewis."). 30(b)(6) TR 60:20 to 60:24.  ("The only thing I was looking for was connection between Carina Lewis and the chief."). Deposition Transcript of Councilman Kelli Augustyn (Augustyn TR) at 41:7 to 41:8.

Defendants terminated Plaintiff Clevenger on February 4, 2020 during an executive session.  Defendants terminated Ms. Montgomery on February 7, 2020. On the day she was terminated, Ms. Montgomery drafted and turned in a request for a hearing which was subsequently denied two days later. The Town was aware of her disagreement with her termination and her intention to challenge that termination at that time.  The Town attorney, Lent was sent an anti-spoliation letter on March 24, 2020 requesting the Defendant Town reinstate the employment of the Plaintiff and formally putting Defendant on notice of litigation. The Plaintiffs and Defendants, through their respective attorneys have met, conferred and discussed the possibility for the deposition of Ms. Lent.  Defendants assert the same would be protected by attorney client privilege. An informal hearing took place on Friday, January 15, 2020 by telephone with the honorable Judge Rankin and this Motion follows.

**ARGUMENT**

Defendants assert the testimony of the Town attorney, Dana Lent is protected by the attorney client privilege and Plaintiff should not be allowed to take her deposition.

> To establish application of the attorney-client privilege, the party claiming the privilege must prove there was: (1) a communication, (2) between privileged persons, (3) made in confidence, and (4) for the purpose of seeking, obtaining, or providing legal assistance.

*Hedquist v. Patterson*, 215 F.Supp.3d 1237 at 1243. (internal citations omitted). "If the Court finds that the privilege applies, the Court must then consider whether the communications were (1) relayed as part of a common interest, or (2) relayed to a non-interested third party and accordingly waived by Defendants." Id.

The individual asserting privilege, Kate Farmer, is the clerk and treasurer for the Town of Guernsey, as well as a named defendant. Agents may include individuals with a "strong relationship to the entity and the need for legal services," but it is worth noting that "it is sometimes unclear which agents of the organization are clients for the purposes of attorney-client privilege." Id. at 1243.  In the present case, assuming privilege applies, the Court should recognize that when privilege is asserted regarding a municipality, that privilege comes at a cost to the public and the public policy of an open and accountable government.

> Assuming that the privilege applies, "[i]t is appropriate to recognize a privilege 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth…. Guided by this principle, courts and commentators have cautioned against broadly applying the privilege to governmental entities…. The recognition of a governmental attorney-client privilege imposes the same costs as are imposed in the application of the corporate privilege, but with an added

disadvantage. The governmental privilege stands squarely in conflict with the strong public interest in open and honest government.

*Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). (Internal citation and quotation omitted).

Typically, a corporate counsel (and by way of comparison a municipal counsel) wears multiple hats, and not all advice will be of a legal nature and protected by privilege. See, e.g., *In re Cent. Gulf Lines*, Nos. 97-3829, 99-1888, 2000 WL 1793395, at *1 (E.D. La. Dec. 4, 2000); *Nedlog Co. v. ARA Servs., Inc.*, 131 F.R.D. 116, 117 (N.D. Ill. 1989). Privilege cannot be used to hide a crime or fraud such as the intentional destruction of evidence. See *United States v. Zolin*, 491 U.S. 554 (1989). Nor should privilege be alleged to avoid the discovery of a potentially perjured statement.

In the present case, the Defendant Kate Farmer claims she had a discussion where Town counsel, Dana Lent and according to Ms. Farmer was advised to review the emails for information which could potentially justify and support the Defendant Town's termination of the fired employees and then permanently delete those email accounts. If Defendant Farmer is believed, then she was advised to review relevant evidence she knew could be supportive of a defense for wrongful termination. She was advised to gather all supportive documents and then forward them to counsel. And finally, she was advised to permanently delete the email accounts of the recently terminated employees.

According to Defendant Farmer, she was advised, after already being put on notice in at least one case of impending litigation by Plaintiff Van Dam, and after receiving a written request for a hearing from Plaintiff Montgomery, and understanding that the emails from each of the three plaintiffs' could relate to the claims of the others, and understanding that these emails would be helpful to the Plaintiff, to permanently destroy all of the email accounts. Defendant

6

has waived any privilege to this conversation because the Defendant is the one who asserted this conversation and disclosed it to opposing counsel.  Plaintiffs should be allowed to challenge this assertion, and go to the source to inquire if this was in fact true.

The 10th Circuit and several other courts have held "that the failure to preserve evidence in violation of a regulation requiring its retention can give rise to an inference of spoliation, even if litigation involving the records is not reasonably foreseeable at the time the records are made. See *Hicks v. Gates Rubber Co*., 833 F.2d 1406, 1419 (10th Cir.1987)). In the present case, the Defendant was subject to 29 CFR § 1602.14 which provides;

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination.

As the employee emails were records kept by the employer, the advice to delete them amounted to advice to violate a statute and as such is not protected by attorney-client privilege.

## CONCLUSION

Assuming privilege applies, it is a privilege between governmental actors and municipal counsel and in direct opposition to the well-recognized public policy of an open, transparent and accountable government which requires the Court to limit any such privilege.  To the extent that such communications related to known impending litigation then the same cannot be protected as this would amount to advising the Defendant to intentionally destroy evidence.  To the extent such communications related to destroying employee records in contrast to federal statute the

same cannot be protected as this would amount to advising Defendant to violate the law. If the limited privilege survives the above, then the Defendant waived the same when she disclosed the content of her communications to opposing counsel without objection. Plaintiff, without deposing Ms. Lent, will be unable to ascertain the truth and scope of Defendant's assertions and as such must be permitted to take Ms. Lent's deposition.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court allow for the deposition of Dana Lent at a time preceding the Discovery Deadline of March 31, 2021 and at the expense of the Defendants and any other relief deemed just and equitable by this Court.

DATED this 22 day of January, 2021.

/s/ Greg B. Asay
Bruce S. Asay W. S. B. # 5 – 1739
Gregory B. Asay W.S.B. #5-7032
1812 Pebrican Ave.
Cheyenne, WY 82001
(307) 632-2888
(307) 632-2828 (fax)
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the 22 day of January, 2021 *via Pacer*:

John D. Bowers
John Bowers Law Office
P.O. Box 1550
Afton, WY 83110
(307) 885-1000
john@1000.legal

8

_____/s/ Greg B. Asay_____
Greg B. Asay